In the Matter of the Testamentary Trust Created Under the Last Will and Testament of William H. RIDDLE, f/b/o Donna Riddle.

Linda Goins, as Trustee, Appellant–Respondent/Cross–Appellee,

v.

Patricia Riddle in her capacity of Guardian of Donna Riddle, Interested Party, Appellee–Petitioner/Cross–Appellant.

No. 41A04–1007–TR–447.

Court of Appeals of Indiana.

March 30, 2011.

Jack Rogers, Rogers & Gesse, Franklin, IN, Attorney for Appellants.

Daniel J. Paul, Courtney Williams Krudy, Williams Barrett & Wilkowski, LLP, Greenwood, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent/Cross–Appellee, Linda Goins (Goins) as Trustee of The Testamentary Trust Created Under the Last Will and Testament of William H. Riddle, f/b/o Donna Riddle (the Trust), appeals the trial court's Order on Trustee's Report in favor of Appellant–Plaintiff/Cross–Appellant, Patricia Riddle (Riddle) in her capacity as guardian of Donna Riddle (Donna).

We affirm in part, reverse in part, and remand for further proceedings.

### ISSUE ON APPEAL

Goins presents five issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred when it concluded that Goins

had breached her duties as trustee of the Trust.

## ISSUES ON CROSS–APPEAL

Riddle presents two issues on cross-appeal, which we restate as:

(1) Whether the trial court abused its discretion when it awarded attorney fees to Riddle which were significantly less than those her counsel initially requested; and

(2) Whether Riddle is entitled to appellate attorney fees.

## FACTS AND PROCEDURAL HISTORY

On February 22, 2001, William H. Riddle died testate and the estate was opened shortly thereafter with Goins as the executrix of the estate. Under the provisions of the will, the testamentary Trust was established for his incapacitated daughter, Donna. Riddle was appointed Donna's guardian and Goins became the trustee of the Trust. The specific provisions establishing the Trust provide, in pertinent part

This Trust is created for the use and benefit of my daughter, [Donna], who is the primary beneficiary and shall hereinafter be referred to as "Beneficiary." The secondary or residuary beneficiaries are those persons who receive the [T]rust income or corpus after the termination of the interest of the Beneficiary.

This [T]rust is created expressly to protect the legal rights of my daughter and to provide extra and supplemental items of incidental services after using the benefits my daughter otherwise receive or may receive, as a disabled person, from any local, state or federal government social programs, or from any other private agencies, any of which provide services or benefits to disabled persons. It is my express purpose that this [T]rust be used only to supplement other benefits received by my daughter Donna.

Section 1. a. The Trustee shall have absolute discretion to determine when and if my daughter Donna needs supportive services and provisions as referred to in the paragraph above. The Trustee may make or withhold payment at any time and in any amount as the Trustees deem appropriate in the exercise of this discretion. The exercise by the trustee of this discretion shall be conclusive and binding on all persons.

. . .

Section 2. In administering this Trust for my daughter, the Trustee shall maintain and distribute the Trust assets as follows:

a. Distribution of income. Until termination of this Trust under the provisions of Paragraph f., the Trustee may pay to or apply for the benefit of my daughter, so much of the net income of the Trust Estate, up to the whole thereof as the Trustee, from time to time in the Trustee'[s] discretion may deem advisable.

The Trustee shall consider the following in making discretionary distributions: The Trustee may supply those items for my daughter not provided by governmental financial assistance and benefits. Such items may include but are not limited to spending money, additional food, clothing, or health services, radios, record players, or television sets, furniture, health equipment, vacation trips, athletic contests, movies, money to purchase appropriate gifts for relatives and friends, salary for a companion or helper, and such other expenditures as the Trustee deem appropriate for the well-being and happiness of my daughter.

The Trustee should periodically contact my daughter and other relatives,

regarding items for my daughter and my daughter's well being or happiness. (Appellant's App. Exh. 2, pp. 2–3).

On March 18, 2001, Goins, as executrix, filed a petition with the trial court to pay the specific bequest provided for in the will and for partial distribution of the Trust. The trial court granted the petition on June 15, 2001. On April 1, 2003, Goins filed a supplemental report of distribution of the estate. The estate was closed on May 5, 2003.

On August 5, 2009, Riddle, as guardian for Donna, filed a verified petition to docket testamentary trust, requesting the trial court to docket the Trust and to order an inventory and accounting of the Trust assets from Goins, in her capacity as trustee. On August 6, 2009, the trial court docketed the Trust. Following the docketing, Goins filed two accountings on August 13, 2009 and February 23, 2010 respectively.

On May 20, 2010, the trial court conducted a hearing on Riddle's allegations that Goins had breached her fiduciary duties as trustee. On May 28, 2010, the trial court issued its Order on Trustee's Report finding that Goins had breached her fiduciary duties, and observing, in pertinent part:

A. The Trust was to be funded with the amount of $325,220.40 from the Estate of William H. Riddle. The Trust reports that it was funded with a distribution from the William Riddle Estate in the amount of $313,700.31. A discrepancy of $11,520.09 exists between the Estate's Final Account and the Trustee's Account as to the initial funding of the Trust.

B. As noted by the beneficiary, the Trust was funded prior to the authorization for distribution from the Estate of William H. Riddle. As a consequence, the Trust paid expenses for the Estate of William H. Riddle from the Trust even though there is no authority under the Trust for the payment of such expenses. The Trustee's account then does not report the expenditures from the Trust for Estate expenses and then alters the funding of the Trust to conform with the omission.

C. The only records of account consist of certain account statements. The Trustee did not otherwise maintain records of account. The account statements are incomplete. Although transfer of assets were infrequent, assets cannot be traced. For instance, the Trustee initially obtained two $25,000.00 Certificates of Deposit. These Certificates of Deposit no longer exist. However, it cannot be determined at what point the Certificates of Deposit ceased to exist or to trace the proceeds. The trustee did not maintain clear and accurate accounts as required by Indiana Code [§ ] 30–4–5–6(b)(6).

D. The only expenditures from the Testamentary Trust for the benefit of [Riddle] over a nine (9) year period of time were health insurance payments over a 23 month period in the total amount of $9,012.85.

E. The Trustee acknowledged that she made no effort to contact either [Donna] or [Riddle] in order to determine [Donna's] needs. No effort is being made to comply with the Trust requirement that: "The Trustee should periodically contact my daughter and other relatives, regarding items for my daughter and my daughter's well being or happiness."

F. The Trustee has made no effort to determine income or principal and to allocate expenses between income and principal.

G. The Trustee invested the sum of $100,000.00 in an annuity. This investment appears to have been done for the purpose of preservation of principal for

the benefit of the remaindermen. As such, the investment would fulfill the Trustee's fiduciary duty to the remaindermen.

H. The Trustee did seek investment advice from investment advisor Dan. A. Woodhouse and agents of Teachers Credit Union. There is diversification of assets as would be required by application of the Prudent Investor Rule. The [c]ourt notes that the interest on the checking account and certificates of deposit was in the total amount of $9,506.18 for nine (9) years. Annual income comes out to three-tenths of a percent (.3%). This low rate of return would indicate that the Trustee is not making the trust property productive for both the income and remainder beneficiaries as required by Indiana Code [§ ] 30–4–3–6(a)(4). This low rate of income would indicate that the particular mix of investments is not the appropriate mix. Investments did well in the early years of the Trust, but the investments have been hard hit in the last few years by what is becoming known as the "Great Recession." It is disturbing that a trust with virtually no expenditures would be worth less after nine (9) years than when the trust was funded. However, no evidence was submitted that the Trust sustained losses due to investment decisions that were inappropriate under the Prudent Investor standard.

I. The Trustee has paid herself the sum of One Thousand Five Hundred Dollars ($1,500.00) per year to serve as Trustee. The stated services provided consisted of meetings with Dan Woodhouse in making investment decisions. Compensation was not based upon time records. No evidence was submitted as to the time required to fulfill Trust duties.

(Appellant's Exh. 1, pp. 3–4). The trial court reduced the trustee's fees to $500 per calendar year for services rendered and ordered the trustee to reimburse the difference between the fees now allowed and the fees previously paid. Additionally, the trial court scheduled new hearings to receive evidence regarding the financial needs of Donna and to examine the discrepancy existing between the estate's final account and the initial funding of the Trust. With respect to attorney fees, the trial court permitted an award in the amount of $4,625 to Riddle, and determined these fees to be the personal responsibility of Goins.

Goins now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### APPEAL

On appeal, Goins disputes the trial court's conclusion that she breached her fiduciary duties as trustee of the Trust.

#### I. Standard of Review

When, as here, the trial court has entered an order containing findings of fact and conclusions of law, we apply a two-step review. *In re Wilson*, 930 N.E.2d 646, 650 (Ind.Ct.App.2010), *reh'g denied, trans. denied*. First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* We will neither reweigh the evidence nor assess witness credibility, considering only the evidence most favorable to the judgment. *Id.* We will set aside the trial court's findings and conclusions only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* We apply a *de novo* standard of review to conclusions of law. *Id.*

Prior to commencing our analysis of Goins' claims, we note that Goins' appel-

late brief is woefully short of complying with Indiana Appellate Rule 46(A). First, Goins fails to include a statement of the case and a standard of review. Furthermore, even though her brief provides for a summary of the argument, it does not include an argument section but merely references to specific 'errors.' Within the 'error' section of her brief—which we will interpret as being the argument section—Goins omits all references to citations to the record and, at places, her argument is too poorly developed to be considered a cogent argument, conflating the different estate case and trust case into one judicial proceeding. The purpose of appellate rules, especially Appellate Rule 46, is to aid and expedite review, as well as to relieve the appellate court of the burden of searching the record and briefing the case. *Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind.Ct.App.2004), *reh'g denied*. Generally, we will deem alleged errors waived where, as here, an appellant's noncompliance with the rules of appellate procedure is so substantial it impedes our appellate consideration of the errors. *Id.* Nevertheless, because of the importance of the issues before us, we will attempt to decide the case on its merits. Meanwhile, we strongly encourage Goins' counsel to review Indiana Appellate Rule 46(A).

## II. *Analysis*

In its Order on Trustee's Report, the trial court concluded that the trustee breached her fiduciary duty to Donna when she failed to render a proper accounting of trust assets, in violation of I.C. § 30–4–5–12 and when she failed to maintain clear and accurate records of accounts, in violation of I.C. § 30–4–3–6. Goins now contends that the trial court made "five assignments of error as to fact or law." (Appellant's Br. p. 4). We will attempt to address each contention.

In support of her respective arguments, Goins repeatedly relies on the trial court's orders issued in the estate case. Goins' main argument focuses on the order in the estate case that permitted Goins, as executrix of the estate, to fund the Trust and additionally required Riddle to file annual guardianship reports. She maintains that because this order in the estate is "binding" on the trial court in the Trust case, the trial court in the Trust case impermissibly shifted the responsibility of filing reports and determining Donna's needs from Riddle to Goins. (Appellant's Br. p. 4).

The orders in the estate case no longer have any bearing on the Trust case. The estate case was opened shortly after William H. Riddle's death on February 22, 2001. After the Trust was funded with the proceeds of the estate on June 15, 2001 and April 1, 2003 respectively, the trial court closed the estate case on May 5, 2003. With respect to the interaction between an estate case and a trust resulting from the estate, Indiana Code section 30–4–6–4(2) provides in pertinent part that "with respect to a decedent's estate docketed for the purpose of probate or administration, which either establishes a trust or makes a devise to another trust, the court shall have no continuing jurisdiction over the administration of the trust after any distribution from the estate is paid or delivered to the trustee." In other words, as soon as the Trust was created and then fully funded on April 1, 2003, the trial court handling the estate case ceased to have continuing jurisdiction over the administration of the Trust. By docketing the Trust on August 6, 2009, the trial court accepted jurisdiction over the Trust, albeit in a jurisdictional proceeding separate and independent from the estate case establishing the Trust. As such, the order issued in the estate case is of no conse-

quence in determining the responsibilities of the trustee in the Trust case.

■ Turning to the issues at hand, a trust is typically characterized as "a fiduciary relationship between a person who, as trustee, holds title to property and another person for whom, as beneficiary, the title is held." Ind.Code § 30–4–1–1(a). In this light, a breach of trust is "a violation by the trustee of any duty that is owed to the settler or the beneficiary." I.C. § 30–4–1–2(4). Generally, a trustee bears the burden of justifying the propriety of items in a trust account. *Matter of Willey's Trust*, 433 N.E.2d 1191, 1193 (Ind.Ct.App. 1982). But when a trustee files specific accounts and makes a *prima facie* showing that the accounts are proper, the burden of persuasion shifts to the beneficiaries to show specific instances of impropriety. *Id.* at 1193–94.

We have previously stated

Accountability is the hallmark of a trust. Property cannot be the subject of a trust where its application for the purposes of the trust depends upon the uncontrolled discretion of the one to whom legal title has been entrusted. Unbridled discretionary powers are inconsistent with the existence of a trust relationship.

*Davis v. Davis*, 889 N.E.2d 374, 385 (Ind. Ct.App.2008) (quoting *Marshall & Ilsley Trust Co., N.A. v. Woodward*, 848 N.E.2d 1175, 1182 (Ind.Ct.App.2006)). "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the marketplace." *Davis*, 889 N.E.2d at 385.

With respect to a trustee's obligation to render an accounting, I.C. § 30–4–5–12 states, in pertinent part:

(a) Unless the terms of the trust provide otherwise or unless waived in writing by an adult, competent beneficiary, the trustee shall deliver a written statement of accounts to each income beneficiary or his personal representative annually. The statement shall contain at least:

(1) all receipts and disbursements since the last statement; and

(2) all items of trust property held by the trustee on the date of the statement at their inventory value.

Our review of the terms of the Trust instrument reveals that neither Riddle nor Donna waived Goins' responsibility to compile an annual statement of the Trust. Although Article VII of William H. Riddle's testament relieves the trustee "from any requirement as to routine Court accounting," this only pertains to an accounting submitted to the trial court, not to the annual accounting delivered to Riddle, as Donna's guardian. (Appellant's App. Exh. 2, p. 8). There is no evidence that Goins ever prepared or sent an annual accounting of the Trust's assets to Riddle or Donna.

The requirement to maintain clear and adequate records is included in I.C. § 30–4–3–6, which provides, in pertinent part:

(a) The trustee has a duty to administer a trust according to its terms.

(b) Unless the terms of the trust provide otherwise, the trustee also has a duty to do the following:

\* \* \*

(6) Maintain clear and accurate accounts with respect to the trust estate.

(7) Upon reasonable request, give the beneficiary complete and accurate information concerning any matter related to the administration of the trust and permit the beneficiary or the beneficiary's agent to inspect the trust property, the trustee's accounts, and

any other documents concerning the administration of the trust.

In its findings, the trial court concluded that even though the trustee kept some records, these records were far from complete or accurate. Reviewing the evidence before us, we agree.

Goins' testimony during the hearing clearly reveals that she lacks a fundamental understanding about the distinction between an estate and a trust, and the corresponding different obligations as executrix of the estate versus as trustee of the Trust; rather, she "looked at it as all being the same amount of money." (Transcript p. 6). Specifically, at the inception of the Trust, Goins appeared to have used Trust assets to pay for expenses emanating from the estate even though the Trust instrument does not grant that authority. Furthermore, the estate account reflects that the Trust was unofficially opened on March 15, 2001 with an initial deposit of $325,220.31. However, according to the inadequate trustee's report submitted by Goins to the trial court, the beginning Trust deposit was $313,700.31, which amounts to a discrepancy of $11,520.09 between what the estate account purports to have been the initial transfer into the Trust and what the Trust account reflects. Goins could not explain this shortfall.

Within the current limited lifetime of the Trust, significant fluctuations in capital occurred. Upon being questioned about these fluctuations, Goins was unable to explain why the Trust liquidated several assets in February of 2009 and incurred capital losses in the amount of $85,514.78. Her accounting fails to include the expenditures, gains, or losses of the Trust since its inception. Goins' sole explanation consisted of asserting that she was "not the investment person." (Tr. p. 26). She even admitted that the trial court's order to submit an accounting resulted in having to "come [up] with a lot of record keeping previously I had not done[.]" (Tr. p. 83).

Although Goins submitted a very limited trustee report when required by the trial court, her testimony makes it abundantly clear that she did not know where the information contained in her accounting originated from, nor did she provide the trial court with the documents supporting the numbers in her trustee report. Likewise, transfer of assets cannot be traced and no effort has been made to allocate expenses between income and principal. Instead of accepting responsibility for her inadequate accounting, Goins attempted to shift blame to Riddle and the bank.

Additionally, the Trust provisions require Goins to "periodically contact [Donna] and other relatives" to determine Donna's needs. (Appellant's App. Exh. 2, p. 3). Goins admitted that she has made no effort to comply with this express obligation. It is troubling to note that prior to the trial court's reduction of trustee fees, Goins had paid herself more out of the Trust for her services as trustee than she ever gave to Donna, the beneficiary of the Trust.

Even though we have only highlighted some of the inconsistencies found in the trustee report, these deficiencies are important enough to support our conclusion that Goins breached her fiduciary duty as trustee to Donna and her guardian by failing to deliver a written accounting statement and to keep complete and accurate records. As such, we affirm the trial court and remand to the trial court to conduct further hearings as detailed in its Order on Trustee's Report.

### CROSS–APPEAL

On cross-appeal, Riddle, as Donna's guardian, first contends that the trial court erred in reducing her counsel's requested attorney fees and now additionally

requests an award of appellate attorney fees. At the outset, we note that Goins did not file a reply brief or responded to this cross-appeal in any way. We believe the procedural posture of this cross-appeal is substantively equivalent to the case where an appellee fails to provide us with an appellee brief. *See McBride v. Cox*, 567 N.E.2d 130, 134 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* It is well-settled that where no answer brief has been filed, the judgment may be reversed if the appellant's brief presents a *prima facie* case of error. *Id.* The reason for the *prima facie* error rule is to relieve us from the burden of controverting arguments advanced for reversal, a duty which properly rests upon counsel for appellee. *Id.* In the context of *prima facie* error analysis on appeal, we have noted that it is not our responsibility to develop arguments for either party. *Id.* Here, we are faced with a problem identical to the one the *prima facie* error rule was designed to ameliorate. We must analyze Riddle's cross-appeal without the benefit of a rebuttal brief. We do not believe there is a rational reason to make the application of the *prima facie* error rule contingent upon the color of a party's brief. *Id.* Therefore, we will reverse if Riddle presents a *prima facie* case of error.

## I. *Reduction in Trial Attorney Fees*

A beneficiary of a trust may maintain an action to compel the trustee to redress a breach of trust or to remove a trustee for cause. I.C. § 30–4–3–21(a). A trustee who commits a breach of trust is liable to the beneficiary for reasonable attorney fees incurred by the beneficiary in bringing an action on the breach. I.C. § 30–4–3–11(b)(4). Here, while finding a breach of trust and finding that an award of attorney fees was warranted, the trial court nevertheless reduced Riddle's counsel's award from his request of $14,714.38 to $4,625.00.

The award or denial of attorney fees is within the sound discretion of the trial court and in the absence of error or abuse of that discretion, we must affirm the trial court's decision. *Davis*, 889 N.E.2d at 386. While the amount of an attorney fee award is likewise within the sound discretion of the trial court, that amount must nonetheless be reasonable and supported by the evidence. *Hanson v. Valma M. Hanson Revocable Trust*, 855 N.E.2d 655, 668 (Ind.Ct.App.2006).

Our court has repeatedly noted that, in determining the reasonableness of an attorney fee award, the trial court should consider:

> not merely the result, but whether the trustees are acting reasonably and in good faith, whether the issue on which they are divided is of little or momentous consequence to the estate or its beneficiaries, whether the facts are undisputed or are so controversial as to require an adversary proceeding for their determination, whether the legal questions are simple or complex, settled by precedents or open to serious debate, and any other matters that bear upon the reasonableness or the necessity for the litigation and the multiple employment or attorneys therein.

*Id.* at 667.

In *Hanson*, beneficiaries of a trust sued the trustee for breach of duty. On remand from its original appeal, the trial court granted the trustee partial summary judgment but ordered the trustee to pay the beneficiaries $25,000.00 of their requested $55,368.00 in attorney fees. *Id.* The beneficiaries again appealed and argued that the trial court erred in reducing the amount of attorney fees to which they were entitled. *Id.* We agreed and remanded the case with orders for the trial court

to evaluate the requested fees in light of the reasonableness of the hourly rate, the number of hours appropriately spent, and complexity of the litigation. *Id.* at 670–71.

Here, Riddle's counsel submitted a twelve-page, itemized accounting regarding the time spent on the case. Each entry of accounting sets forth the specific action taken, the date it was performed, by whom, the amount of time spent, the hourly rate charged, and the total charge billed. After applying a discount, Riddle's counsel requested to be paid $14,714.38.

The trial court's complete rationale for its reduction of the award was as follows:

> The [c]ourt cannot but note the extreme discrepancy between the charges by respective counsel for the pending litigation prior to the contested hearing. Fourteen hours versus one hundred twenty eight hours. $2,975.80 versus $14,714.38. The issues are not found to be complex. The breaches of duty were apparent. The [c]ourt will allow twenty-five (25) hours at One Hundred Eighty–Five Dollars ($185.00) per hour for a total of Four Thousand Six Hundred Twenty–Five Dollars ($4,625.00) as reasonable attorney fees. Personal liability is imposed upon [Goins] under Indiana Code [§ ] 30–4–3–11 in the amount of Four Thousand Six Hundred Twenty–Five Dollars ($4,625.00). Such amount is to be paid within the one hundred twenty (120) day time period.

(Appellant's App. Exh. 1, p. 8).

We find this explanation insufficient to justify the trial court's significant reduction of the attorney fee request. The trial court's overriding concern—the discrepancy in amount of time spent by Riddle's counsel versus Goins' counsel—is not one of the identified bases to determine an award of attorney fees. *See Hanson*, 855 N.E.2d at 667. During the hearing, Riddle's counsel clarified that he had to foren-sically recreate approximately nine years of Trust activity with little to no useful information provided by Goins. Although Riddle's counsel concedes that, at first glance, the issues at hand were not overly complex, the trustee's breaches and the deficient accounting transformed a simple matter into a complex, time consuming legal proceeding. In light of our court's reasoning in *Hanson* and the facts presented to us, we reverse the trial court's attorney fee award in the amount of $4,625.00 and remand this issue to the trial court to determine what attorney fees were reasonably incurred by Riddle's counsel in this cause.

## II. *Appellate Attorney Fees*

■ After the trial court returned a verdict in favor of Riddle, Goins filed an appeal. On appeal, we now affirm the trial court's conclusion that Goins breached her fiduciary duties as trustee. Indiana Code section 30–4–3–11(b)(4) provides that if the trustee commits a breach of trust, he is liable to the beneficiary for reasonable attorney's fees incurred by the beneficiary in bringing an action on the breach. Also, Indiana Code section 30–4–3–22(e) stipulates that if a beneficiary successfully maintains an action to compel a trustee to perform his duties, the beneficiary is entitled to a judgment for reasonable attorney fees. Although not expressly stated, we find the language of the statute broad enough to encompass reasonable appellate attorney fees. As a result, we remand to the trial court for the determination of a reasonable award of appellate attorney fees.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly concluded that Goins had breached her duties as trustee of the Trust. With respect to the cross-appeal, we remand to the trial court for

the determination of reasonable trial and appellate attorney fees.

Affirmed in part, reversed in part, and remanded for further proceedings as stated in our opinion and the remaining proceedings contemplated in the trial court's Order on Trustee's Report.

ROBB, C.J., and BROWN, J., concur.